IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JUAN VALDEZ | * | |
| Plaintiff | * | |
| v. | * | CIVIL ACTION NO. DKC-04-2225 |
| FEDERAL BUREAU OF PRISONS | * | |
| HARRELL WATTS | | |
| HARLEY G. LAPPIN | * | |
| BOBBY P. SHEARIN | | |
| MICHAEL R. MUIR | * | |
| JEFFREY BANEY | | |
| JOHN SHOCKEY[1] | * | |
| Defendants. | * | |

******

**MEMORANDUM**

I.   Introduction

Plaintiff, then a prisoner at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland")[2], filed this 28 U.S.C. § 1331 *Bivens*[3] civil rights complaint for declaratory relief and damages on July 14, 2004.  He files suit against the General Counsel and Regional Director for the U.S. Bureau of Prisons ("BOP"); the Warden at FCI-Cumberland; classification counselors and a unit manager at FCI-Cumberland; and the BOP.

---

[1]   The Clerk shall amend the docket to reflect the correct spelling of the name of this Defendant.

[2]   According to the Bureau of Prisons website, Petitioner is no longer in Cumberland, but is in the Oklahoma City Federal Transfer Center.

[3]   *See Bivens v. Six Unknown Named Agents of the Bureau of Narcotics*, 403 U.S. 388 (1971).

Plaintiff generally complains that Defendants: (i) conspired to place him on Inmate Financial Responsibility Program ("IFRP") "Refuse" status, despite his indigency, resulting in his assignment to lower paying jobs, the lowest housing status, and the denial of education and rehabilitative programs;[4] and (ii) refused to take action to modify the illegal acts taken by other Defendants. Paper No. 1. Plaintiff further alleges that the BOP failed to properly instruct and supervise its officers on the standards of the IFRP.[5] *Id*.

Plaintiff specifically claims that in July, 2002, Defendants Muir and Shockey met and agreed that Plaintiff would be required to enter into a contract for the payment of court assessments. Paper No. 1 at 8. He asserts that on August 8, 2002, he was notified that he would be assigned to a three-man cell, and that soon after, his job assignment was changed due to his "Refuse" status, even with the knowledge that

---

[4] Plaintiff claims that he should have been placed in IFRP "Exempt TMP." Paper No. 1 at 9.

[5] The IFRP is a voluntary program through which inmates commit a percentage of their prison employment earnings to the payment of court-ordered obligations. *See* 28 C.F.R. § 545.10-11. As part of the initial classification process, BOP staff assist the inmate in developing a financial plan to meet those obligations. Each inmate is responsible for making satisfactory progress in meeting his financial responsibility plan and for providing documentation of those payments to staff. *See* 28 C.F.R. § 545.11(b). Unit staff review an inmate's progress in meeting the obligations each time staff evaluated an inmate's demonstrated level of responsible behavior. *See* 28 C.F.R. § 545.11(c). Inmates who decline to participate in the IFRP or fail to comply with their individual financial plans ("Refuse" status) are subject to the loss of certain privileges or benefits as provided for under 28 C.F.R. § 545.11(d)(1)-(9) and (11), i.e., loss of prison privileges and incentives including parole, furloughs, performance or vacation pay, outside work details, UNICOR work privileges, special purchase entitlement, community-based programs, and loss of housing status whereby the inmate will be quartered in the lowest status prison housing. The IFRP is designed to encourage inmates in federal facilities to meet their legitimate financial obligations. *Johnpoll v. Thornburgh*, 898 F.2d 849, 851 (2$^d$ Cir. 1990) (IFRP serves valid penological interests and is fully consistent with the Bureau of Prison's authorization....to provide for rehabilitation and reformation). The Fourth Circuit has consistently upheld the propriety of collecting fines and special assessments through the IFRP. *See, e.g.*, *United States v. Espinoza-Cartagena*, 23 Fed.Appx. 187, 188 (4th Cir. 2002) (unpublished); *United States v. Walker*, 83 F.3d 94, 95 (4th Cir. 1996); *United States v. Francisco*, 35 F.3d 116, 122 (4th Cir. 1994).

he could not meet certain goals due to his indigency. *Id*. Plaintiff claims that Defendant Shockey again changed Plaintiff's job assignment because he filed a grievance against Shockey. *Id*. at 8-9.

II.     Dispositive Pleadings

        A.  Defendants' Motion to Dismiss or in the Alternative for Summary Judgment

Defendants have filed a Motion to Dismiss or in the Alternative for Summary Judgment, presenting a variety of arguments in support of their Motion. Paper No. 7. First, they contend Plaintiff's claims should be dismissed as moot because in June, 2004, he was placed on IFRP "Temporarily Exempt" status and removed from "Refuse" status. *Id*., Ex. 1 at Shockey Decl. They assert that any effects of his non-participation, such as being quartered in the lowest housing status, have been lifted. *Id*. Defendants also argue that any future decisions by Plaintiff's unit team regarding his IFRP status will be based on entirely different facts and that his current claims, which have been resolved, are not capable of repetition. *Id*. Defendants seemingly claim that while Plaintiff seeks damages and declaratory relief, he cannot "provide any evidence that he incurred any monetary damages." *Id*.

Finally, Defendants assert that Plaintiff's claim of retaliation should be dismissed because (i) Plaintiff cannot show that his constitutional rights were adversely affected; and (ii) the record does not support his claim that his job re-classification occurred in retaliation for his grievance against Defendant Shockey. *Id*.

For purposes of a review of the relevant facts in this case, Defendants present the following details in regard to Plaintiff's housing and classification assignments at FCI-Cumberland:

1.     Plaintiff has been incarcerated at FCI-Cumberland since November 29, 1999, where he is serving a 360-month sentence on drug trafficking conspiracy and drug distribution and possession convictions;

2.     As part of his sentence, Plaintiff was ordered to pay criminal monetary penalties in the amount of $1,200.00;

3. In December, 1999, Plaintiff began his voluntary participation in the IFRP, by entering into a contract to make $25.00 payments towards his court-ordered fine on a quarterly basis;

4. Because Plaintiff missed his September, 2000 IFRP payment, his unit team placed him on IFRP "Refuse" status. Plaintiff was, however, removed from that status and placed back on "Participate" status when he began making his $25.00 quarterly payments in December, 2000. Plaintiff continued to make quarterly payments through March, 2002;

5. Plaintiff missed his June, 2002 payment. He entered into a new *monthly* financial contract on June 26, 2002, with the understanding that he would make a $25.00 payment in July, 2002, to make up for his missed payment and would then contact his unit team to enter into a new contract to resume his quarterly payments in September, 2002;

6. Plaintiff made his July, 2002, $25.00 payment but did not contact his unit team to enter into a new, quarterly payment contract. As the monthly contract remained in effect, when Plaintiff failed to make his August, 2002 IFRP payment, his unit team placed him in IFRP "Refuse" status on August 21, 2002;

7. Due to the "Refuse" status, Plaintiff's unit team transferred him to a three-man cell and changed his performance pay level to maintenance pay;

8. Plaintiff remained on IFRP "Refuse" status until June 16, 2004.[6] On that date, his unit team determined-- based on prior six month deposits of $51.50 in his inmate account, limited community resources, and court filing fees-- Plaintiff had insufficient funds to participate in the IFRP.[7] His IFRP status was changed from "Refuse" to "Temporarily Exempt" and the unit team restored lost privileges and placed him on a waiting list for a two-man cell. Plaintiff's pay level was raised from maintenance pay to Grade 4 pay level on August 25, 2004; and

9. Plaintiff's unit team will review his "Temporarily Exempt" status at his next program review in December, 2004.

Paper No. 7, Ex. 1 at Attachments B-H, Shockey Decl.; Ex. 2 at Attachment B, Greene Decl.

---

[6] According to Defendants, a status of "Temporarily Exempt from Participation" or "Exempt" in the IFRP program will be entered for an inmate who is unable to participate adequately towards satisfaction of the obligation, ordinarily because of medical or psychological restrictions; an inmate's inability to secure employment; or an inmate's inability to advance beyond maintenance pay due to circumstances beyond his control. Paper No. 7, Ex. 1, Shockey Decl.

[7] The "Prior Inmate Activity" records presented by Defendants indicate that, when documented, Plaintiff's six-month deposit amounts ranged from $37.85 to $390.48, for the periods between June, 2002, and April, 2004. Paper No. 7, Ex. 1 at Attachment D.

In their substantive arguments, Defendants provide evidence to demonstrate that Plaintiff's IFRP status, and the resulting housing, job, and programming assignments, were based upon his compliance and non-compliance with the terms of his IFRP contracts, and were not part of a conspiracy or a reprisal against him. Defendants affirm that Plaintiff has had approximately nine job assignments since being designated to FCI-Cumberland, and that on two occasions, he specifically asked for a job transfer. They maintain that Plaintiff's removal from his position as an orderly in August, 2002, was based on the uniform application of BOP policy regarding inmates placed on IFRP "Refusal" status, not in retaliation for grievances filed against classification personnel. Defendants note that Plaintiff was given a position at the maintenance pay level in both the mechanical services and the maintenance departments, and then, pursuant to his September 4, 2002 request, was approved for a job in the education department at FCI-Cumberland, working as a law clerk.

B.  Plaintiff's Motion to Dismiss or in the Alternative Motion for Summary Judgment

Plaintiff complains that the BOP and its personnel overstepped their authority by placing him on IFRP "Refuse" status, even though Defendants knew that he did not have the assets to enter into the program. Paper No. 9. He claims that he never refused to enroll in the program, but was improperly reclassified from "Participation" to "Refuse" status by a unit team decision solely due to his indigency. *Id*.

Plaintiff maintains that he has stated a viable constitutional claim and that his complaint has not been rendered moot because: (i) the alleged deprivations are capable of repetition and (ii) he is seeking more than injunctive relief. *Id*. Finally, Plaintiff maintains that Shockey's actions in reassigning him from job to job can only be characterized as retaliatory, given that: (i) he filed a grievance against Shockey for assignment to IFRP "Refuse" status; and (ii) Shockey thereafter reassigned him from various job details

5

three times in one week, a practice outside the timetable for changes in "work detail program assignments" under applicable BOP program statements. *Id*

III.  Discussion

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56.  "A defendant moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that he is entitled to judgment as a matter of law...Once a defendant makes a necessary showing, the plaintiff must go forward and produce evidentiary facts to support his contention." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). *See also* Fed. R. Civ. P. 56(e).  However, the non-movant is entitled to have all reasonable inferences drawn in his favor. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

It is undisputed that Plaintiff has been ordered to pay $1,200.00 in criminal penalties and that in December, 1999, he voluntarily entered into contract for quarterly $25.00 payments under the IFRP.[8] The records show that he missed his June, 2002 payment and, on June 26, 2002, entered into a new monthly payment contract to make up the missed payment.  Defendant Shockey affirms that it was

---

[8] Once an inmate executes an IFRP contract agreeing to make a minimum payment of $25.00 dollars per quarter, BOP officials form a "unit team" which meets with the inmate at the commencement of his incarceration (or his first program review meeting) to establish a payment plan. Thereafter, the unit team holds regularly-scheduled program reviews during which the team determines whether the inmate has made sufficient progress towards fulfilling his financial obligations. Based on the unit team's findings, an inmate may be asked to use funds from prison employment or contributions from outside sources to satisfy his financial obligations.  *See* 28 C.F.R. §§ 542.10, 542.11; Program Statement 5380.07.  Further, if the unit team determines that the inmate is not making payments as required by his IFRP contract, the unit team has the discretion to place the inmate on "Refuse" status, which, in turn, may result in a variety of adverse consequences to the inmate. Once placed on "Refuse" status, an inmate must satisfy conditions set by the unit team to change this status.  *Id*.

understood that Plaintiff would contact the unit team to enter a new contract to resume quarterly payments. Plaintiff made up the missed payment in July, 2002, but according to Defendants, Plaintiff did not affirmatively seek to modify his new monthly payment contract into a quarterly contract. When the August, 2002 monthly payment was missed, the unit team placed Plaintiff on "Refuse" status, on which he remained until June 2004.

The record shows that for the twenty-two month period following Plaintiff's classification to the IFRP "Refuse" status, he worked on various job assignments, primarily at maintenance pay. When Plaintiff was originally placed on "Refuse" status in August, 2002, he was employed as a CCS orderly. As a result of his non-participation in the IFRP program, on August 27, 2002, Plaintiff was initially removed from his orderly position to a food services job. On September 4, 2002, he was moved to maintenance pay level positions in the mechanical services and general maintenance departments. On September 10, 2002, Plaintiff was transferred to a job in the education department pursuant to his request. He remained assigned to a job in the FCI-Cumberland education department through July, 2004. The court finds nothing constitutionally untoward or retaliatory with the unit team decisions regarding Plaintiff's job assignments from August 27 to September 10, 2002.[9]

Further, it remained within the discretion of the unit team to determine Plaintiff's status on IFRP during the course of the periodic unit reviews. *See Williams v. Farrior*, 334 F. Supp. 2d 898, 900-01 (E.D. Va. 2004). The records show that at the time he was placed on "Refuse" status in August, 2002,

---

[9] Plaintiff continues to level claims of retaliation against Defendant Shockey, alleging that after he filed a grievance against Shockey, he was removed and transferred to different jobs. At no time, however, does Plaintiff provide this court any specific information regarding the content and date of that grievance. Defendants affirm that according to computerized records, Plaintiff filed thirteen administrative remedies while at FCI-Cumberland, and that the remedies were filed between September 6, 2002 and July 21, 2004. Paper No. 7, Ex. 1 at Greene Decl.

Plaintiff had retained over $200.00 in deposits in the preceding six-month period, yet had failed to make his $25.00 payment. Subsequent unit reviews indicated that Plaintiff was missing payments and had received deposits to his account. In June, 2004, the unit team decided to place Plaintiff in temporary exempt status, noting he had limited deposits to his account and owed court filing fees.

Plaintiff has no cognizable liberty interest in any prison job assignment or in placement in any particular prison facility. Thus, he is not entitled to due process protections against the loss of or transfer to another prison job or facility placement for failure to comply with the IFRP requirements. *James v. Quinlan*, 866 F.2d 627, 630 (3d Cir.1989). Moreover, even assuming the existence of some protected interests in prison employment or assignment, enforcement of IFRP requirements is reasonably related to legitimate penological interests and, therefore, does not violate these interests.[10]

IV. Conclusion

For the foregoing reasons, the court concludes that Plaintiff has failed to meet his burden of showing that the Defendants' actions were retaliatory or comprised prohibited conduct under the U.S. Constitution. Accordingly, summary judgment shall be entered in favor of Defendants and against Plaintiff as to all claims.

A separate Order shall be entered reflecting the rulings set out herein.

Date:   August 4, 2005                                        /s/
                                                DEBORAH K. CHASANOW
                                                United States District Judge

---

[10] There is no dispute that Plaintiff was placed in lower-level housing during portions of the time he was on Refuse status. However, Plaintiff has failed to show that this housing assignment was so egregious as to cause him injury or was somehow "atypical" from the day-to-day housing conditions experienced by inmates. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995);*Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). .